**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| GARY BRUCE,<br>        *Plaintiff,*<br><br>v.<br><br>OLDE ENGLAND'S LION & ROSE RIM,<br>LLC, ALLEN THARP,<br>        *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-20-CV-00928-XR |
| MICHAEL SUMMERS,<br>        *Plaintiff,*<br><br>v.<br><br>OLDE ENGLAND'S LION & ROSE RIM,<br>LLC, ALLEN THARP,<br>        *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-20-CV-00929-XR |
| SPENCER COX,<br>        *Plaintiff,*<br><br>v.<br><br>OLDE ENGLAND'S LION & ROSE RIM,<br>LLC, ALLEN THARP,<br>        *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-20-CV-01046-XR |

## <u>ORDER</u>

On this date, the Court considered Defendants' motions for summary judgment, Plaintiffs' responses, and Defendants' replies in three related cases. For the reasons discussed more fully below, the Court **DENIES** the motions.

## BACKGROUND

Plaintiffs Gary Bruce, Michael Summers, and Spencer Cox seek damages pursuant to the Emergency Paid Sick Leave Act ("EPSLA") for their allegedly unlawful terminations from the

1

Lion & Rose, a food and beverage service establishment managed by Defendant Allen Tharp through Defendant Olde England's Lion & Rose Rim, LLC. No. SA-20-CV-928-XR, ECF No. 1 ("Bruce Compl.") ¶ 1; No. SA-20-CV-929-XR, ECF No. 1 ("Summers Compl.") ¶ 1; No. SA-20-CV-1046-XR, ECF No. 1 ("Cox Compl.") ¶ 1. Olde England's Lion & Rose Rim, LLC is a Texas limited liability company whose members are Allen Tharp & Associates, Inc. and ATA Restaurant Holding Company, LLC. *See* No. SA-20-CV-928-XR, ECF No. 32-2 ("Defs.' Mot. Ex. 1").[1] Allen Tharp & Associates, Inc. is a Texas corporation "that oversees and manages investments including fast casual drive thru chicken restaurant franchises, full service British styled sport pub restaurants, and other similar investments." No. SA-20-CV-928-XR, ECF No. 41 ("Tharp Aff.") ¶ 5.[2] Tharp is the "President, incorporator, and sole Director of Allen Tharp & Associates, Inc." *Id.* ¶ 4; *see also* No. SA-20-CV-928-XR, ECF No. 32-3 ("Defs.' Mot. Ex. 2"). ATA Restaurant Holding Company, LLC is a Texas limited liability company; its sole member, organizer, and manager is also Tharp. Tharp Aff. ¶¶ 8–9; *see also* No. SA-20-CV-928, ECF No. 32-4 ("Defs.' Mot. Ex. 3").[3]

Along with his wife, Tharp also manages Allen Tharp, LLC. Tharp Aff. ¶ 7; *see also* No. SA-20-CV-929-XR, ECF No. 32-7 ("Defs.' Mot. Ex. 6"). Allen Tharp, LLC is a Texas limited liability company that operates as a "food and beverage service contractor at Lackland Air Force Base in San Antonio, TX." Tharp Aff. ¶ 6; *see also* Defs.' Mot. Ex. 6 at 1. "As part of its contract,

---

[1]    Because the briefing and corresponding exhibits are identical in all three cases, the Court cites to the briefing and exhibits in *Bruce v. Olde England's Lion & Rose Rim, LLC*, No. SA-20-CV-928-XR, only. When relying on substantive evidence, the Court makes clear that the evidence is present in all three cases. *See, e.g.*, *infra* note 2.

[2]    Tharp filed identical declarations in support of all three of Defendants' motions. *See* No. SA-20-CV-928-XR, ECF No. 41-1; No. SA-20-CV-929-XR, ECF No. 43-1; No. SA-20-CV-1046-XR, ECF No. 23-1.

[3]    It appears that ATA Restaurant Holding Company, LLC was initially formed as a limited liability company under the name L&R Concord Plaza GP, LLC. *See* Defs.' Mot. Ex. 3 at 1–9. The formation documents state that "[t]he limited liability company will not have managers" and that "[t]he company will be governed by its members[.]" *Id.* at 1. Although the formation documents indicate that the company's initial member is Allen Tharp & Associates, Inc., *see id.*, public documents attached to the formation documents show that Tharp is the only member, *see id.* at 10–11. It is undisputed that Tharp is the president, sole director, and incorporator of Allen Tharp & Associates, Inc. *See* Tharp Aff. ¶ 4; *see also* Defs.' Mot. Ex. 2 at 3.

Allen Tharp, LLC provides Full Food Service to the base, managing and operating sixteen state of the art full service dining facilities, one field feeding site, and one central pastry kitchen, providing over one million high quality and nutritious meals per month to Lackland personnel." Tharp Aff. ¶ 6. Through Allen Tharp, LLC, Tharp and his wife co-manage these military dining facilities.

Prior to their terminations, Summers and Cox were bartenders at the Lion & Rose. Summers Compl. ¶¶ 1, 4, 7; Cox Compl. ¶¶ 1, 4, 7. Summers and Cox reported to Jessica Atkins, a bar manager at the Lion & Rose. No. SA-20-CV-928-XR, ECF No. 33-2 ("Summers Decl.") ¶ 6; No. SA-20-CV-928-XR, ECF No. 33-3 ("Cox Decl.") ¶ 3.[4] Cox alleges that, on July 2, 2020, he began to suffer from COVID-19 symptoms. Cox Compl. ¶ 9. To determine whether he had contracted the virus, Cox contacted a friend who informally administered a COVID-19 test. *Id.* The following day, the friend informed Cox that he had in fact contracted COVID-19 and that he should quarantine. *Id.*

Cox then contacted the manager on duty at the Lion & Rose to communicate his COVID-19 diagnosis. *Id.* Cox alleges that the manager on duty told him "not to worry, and that he would tell the other managers." *Id.* Thereafter, Atkins contacted Cox and asked him to provide proof of his positive COVID-19 test. *Id.* Tharp also requested proof of Cox's positive COVID-19 test. *Id.* On July 4, 2020, to obtain proof, Cox went to a clinic and underwent testing for the COVID-19 virus. *Id.* ¶ 10. That test also came back positive. *Id.* Cox relayed proof of his positive COVID-19 test to Atkins via text message and Tharp via email. *Id.*

A few days later, on July 6, 2020, Cox accessed his employee schedule and discovered that his name was not listed on the schedule. *Id.* ¶ 11. Cox spoke to a manager at the Lion & Rose, who

---

[4]     Summers and Cox filed identical declarations opposing all three of Defendants' motions. *See* No. SA-20-CV-928-XR, ECF Nos. 33-2, 33-3; No. SA-20-CV-929-XR, ECF Nos. 35-2, 35-3; No. SA-20-CV-1046-XR, ECF Nos. 24-2, 24-3.

allegedly told him that he "had been instructed to terminate [Cox] and the other bartender who had COVID."[5] *Id.* According to Cox, "Tharp instructed his managers that anyone who tests positive for COVID was to be fired." *Id.* ¶ 12.

Summers alleges that, on July 3, 2020, Cox informed him that he had tested positive for the COVID-19 virus. Summers Compl. ¶ 9. Because Summers had been in close contact with Cox, Summers contacted his supervisor at the Lion & Rose to request time off. *Id.* The supervisor allegedly told Summers to report to work because he had not tested positive for the virus. *Id.* Still hesitant, Summers asked the supervisor to obtain clarification from Tharp. *Id.* ¶ 10. Before his shift began, Summers contacted a different supervisor at the Lion & Rose, who allegedly told him that Tharp had stated that Summers and Cox "were faking it in order to get the Fourth of July weekend off." *Id.* Summers then contacted Tharp and told him that, because Cox had tested positive for the COVID-19 virus and because he had been in close contact with Cox, he intended to undergo testing for the virus. *Id.* ¶ 11. Tharp allowed Cox to take time off, but allegedly instructed "managers to advise any employees who had concerns about reporting to work that [Summers and Cox] did not actually test positive." *Id.* Summers alleges that Tharp told his managers that he and Cox "were to be fired for unrelated, pretextual reasons." *Id.*

On July 4, 2020, Summers underwent testing for COVID-19 and learned that he had, in fact, contracted the virus. *Id.* ¶ 12. The next day, Summers woke up feeling ill. *Id.* ¶ 13. Fearing that he had been terminated, Summers attempted to access his employee schedule online, but his access was denied. *Id.* Summers contacted his supervisor at the Lion & Rose, who informed him "that he had been terminated on Defendant Tharp's instruction." *Id.* Summers then contacted Tharp

---

[5]     It appears that the other bartender was Summers.

and asked him whether he was terminated. *Id.* ¶ 14. Summers alleges that "Tharp falsely denied that he had previously given the order to fire [him] but stated that [he] was now terminated." *Id.*

Bruce was a general manager at the Lion & Rose before his termination. Bruce Compl. ¶ 1; *see also* No. SA-20-CV-928-XR, ECF No. 33-4 ("Bruce Decl.") ¶ 2.[6] Bruce reported to Tharp and Frank Ayala, a former general manager at the Lion & Rose. Bruce Compl. ¶ 8; *see also* Bruce Decl. ¶ 4. Bruce alleges that, on July 8, 2020, he began to suffer from a high fever and underwent testing for the COVID-19 virus. Bruce Compl. ¶ 9. Bruce feared that he may have contracted the virus after being in close contact with two co-workers who had tested positive for COVID-19.[7] *Id.* On the day he underwent testing, Bruce informed Tharp that he could not report to work because he had a high fever, was feeling unwell, and had to remain in quarantine for seven to ten days pending testing results. *Id.* Bruce alleges that he "was concerned that Defendant Tharp would have an unfavorable reaction . . . as Defendant Tharp had previously reacted with great animosity when he learned that two bartenders had tested positive."[8] *Id.*

Bruce returned to work after testing negative for the virus. *Id.* ¶ 10. When he received his paycheck, however, Bruce discovered that had not been paid for the days he quarantined. *Id.* Believing that the EPSLA entitled him to paid sick leave under the circumstances, Bruce spoke with Tharp to remedy the situation; he was unsuccessful. *Id.* at 4. On July 26, 2020, Tharp terminated Bruce. *Id.* ¶ 11.

On August 10, 2020, Bruce and Summers initiated separate actions in this Court against Olde England's Lion & Rose Rim, LLC and Tharp for wrongful discharge under the EPSLA. *See*

---

[6]     Bruce filed identical declarations opposing all three of Defendants' motions. *See* No. SA-20-CV-928-XR, ECF No. 33-4; No. SA-20-CV-929-XR, ECF No. 35-4; No. SA-20-CV-1046-XR, ECF No. 24-4.

[7]     It is unclear whether the two co-workers were Summers and Cox.

[8]     It is unclear whether the two bartenders were Summers and Cox.

*Bruce v. Olde England's Lion & Rose Rim, LLC*, No. SA-20-CV-928-XR (W.D. Tex. filed Aug. 10, 2020); *Summers v. Olde England's Lion & Rose Rim, LLC*, No. SA-20-CV-929-XR (W.D. Tex. filed Aug. 10, 2020). The Undersigned was assigned to these two cases. On September 3, 2020, Cox initiated a third action against Olde England's Lion & Rose Rim, LLC and Tharp, also alleging wrongful discharge under the EPSLA. *See Cox v. Olde England's Lion & Rose Rim, LLC*, No. SA-20-CV-1046-XR (W.D. Tex. filed Sept. 3, 2020). United States District Judge Fred Biery was assigned to Cox's case. On September 9, 2021, upon finding that all three cases were related, Judge Biery issued an order transferring and reassigning Cox's case to the Undersigned.

On July 12, 2021, Defendants filed identical motions for summary judgment in all three cases.[9] Defendants argue that they are not subject to liability under the EPSLA because, pursuant to the single integrated enterprise and joint employer doctrines, they are not covered employers under the EPSLA. Plaintiffs Bruce, Summers, and Cox filed identical responses in opposition,[10] and Defendants filed identical replies.[11]

## DISCUSSION

### I.   Summary Judgment Standard

The Court shall grant summary judgment if the movants show that there is no genuine dispute as to any material fact and the movants are entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving parties bear the initial burden of "informing the Court of the basis of its

---

[9]      *See* No. SA-20-CV-928-XR, ECF No. 32; No. SA-20-CV-929-XR, ECF No. 34; No. SA-20-CV-1046-XR, ECF No. 23.

[10]      *See* No. SA-20-CV-928-XR, ECF No. 33; No. SA-20-CV-929-XR, ECF No. 35; No. SA-20-CV-1046-XR, ECF No. 24.

[11]      *See* No. SA-20-CV-928-XR, ECF No. 37; No. SA-20-CV-929-XR, ECF No. 39; No. SA-20-CV-1046-XR, ECF No. 25.

motion" and identifying those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006).

To establish that there is no genuine issue as to any material fact, the movants must either submit evidence that negates the existence of some material element of the nonmovants' claims or defenses, or, if the crucial issue is one for which the nonmovants will bear the burden of proof at trial, point out that the evidence in the record is insufficient to support an essential element of the nonmovants' claims or defenses. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994). Once the moving parties meet this burden, the nonmoving parties must "go beyond the pleadings" and designate specific facts in the record showing that there is a genuine issue for trial. *Access Mediquip, L.L.C. v. United Healthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011).

For the Court to conclude that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovants, or, in other words, that the evidence favoring the nonmovants is insufficient to enable a reasonable jury to return a verdict for the nonmovants. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court should review all the evidence in the record, giving credence to the evidence favoring the nonmovants as well as the "evidence supporting the moving part[ies] that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving parties, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.    Analysis

Congress enacted the Emergency Paid Sick Leave Act ("EPSLA") under the Families First Coronavirus Response Act ("FFCRA") in response to the unprecedented and ongoing COVID-19 pandemic.[12] FFCRA, Pub. L. No. 116–127, § 5101, 134 Stat. 178, 195 (Mar. 18, 2020); *see New York v. U.S. Dep't of Lab.*, 477 F. Supp. 3d 1, 5 (S.D.N.Y. 2020) ("The legislation at the heart of this litigation, the Families First Coronavirus Response Act, is one of several measures Congress has taken to provide relief to American workers and to promote public health."); *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 78 (2020) (Sotomayor, J., dissenting) (noting that, at the time, the COVID-19 pandemic had "already claimed over a quarter million American lives"). "The EPSLA requires covered employers to provide paid sick leave to employees with one of six qualifying COVID-19 related conditions." *New York*, 477 F. Supp. 3d at 5 (citing §§ 5102, 5110(2), 134 Stat. at 195–96, 198–99). The six qualifying COVID-19 related conditions are when the employee:

> (1) "is subject to a Federal, State, or local quarantine or isolation order related to COVID-19"; (2) "has been advised by a health care provider to self-quarantine due to concerns related to COVID-19"; (3) "is experiencing symptoms of COVID-19 and seeking a medical diagnosis"; (4) "is caring for an individual subject" to a quarantine or isolation order by the government or a healthcare provider; (5) is caring for a child whose school or place of care is closed, or whose childcare provider is unavailable, because of COVID-19; or (6) "is experiencing any other substantially similar condition specified by the Secretary of Health and Human Services in consultation with the Secretary of the Treasury and the Secretary of Labor."

---

[12]    "COVID-19 [is] a novel severe acute respiratory illness that has killed . . . more than [700],000 nationwide." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief); *see also* Centers for Disease Control and Prevention–National Center for Health Statistics, Provisional Death Counts for Coronavirus Disease 2019 (COVID-19), https://www.cdc.gov/nchs/nvss/covid-19.htm (last visited Oct. 22, 2021). The FFCRA includes both the Emergency Family and Medical Leave Expansion Act ("EFMLEA") and the EPSLA. *See* §§ 3101, 5101, 134 Stat. at 190, 195. "The EFMLEA and EPSLA are modeled after the Family and Medical Leave Act . . . and the Fair Labor Standards Act . . . respectively, to provide paid leave and other benefits to employees for various reasons related to COVID-19." *O'Bryan v. Joe Taylor Restoration, Inc.*, No. 20-CV-80993, 2021 WL 53281, at *1 n.1 (S.D. Fla. Jan. 6, 2021). Plaintiffs assert claims pursuant to the EPSLA only. *See generally* Bruce Compl., Summers Compl., Cox Compl.

*Sprague v. Ed's Precision Mfg., LLC*, No. H-20-2604, 2021 WL 2898804, at *4 (S.D. Tex. July 9, 2021) (quoting § 5102(a), 134 Stat. at 195–96). The EPSLA makes it unlawful for an employer "to discharge, discipline, or in any other manner discriminate against an employee who . . . takes leave in accordance with" the EPSLA. § 5101, 134 Stat. at 196. The EPSLA covers only "those private entities or individuals engaging in commerce or in an industry affecting commerce and employing fewer than 500 employees." *Luna v. Am. Nat'l Ins. Co.*, No. EP-21-CV-00064-FM, 2021 WL 1911339, at *2 (W.D. Tex. May 12, 2021) (citing § 5110(2)(B), 134 Stat. at 198–99).

To avoid triggering the threshold numerosity requirement under an employment discrimination statute, employers typically argue against application of the single integrated enterprise or joint employer doctrines. *See Burton v. Freescale Semiconductor, Inc.*, 789 F.3d 222, 229 (5th Cir. 2015) ("A staffing agency is liable for the discriminatory conduct of its joint-employer client if it participates in the discrimination, or if it knows or should have known of the client's discrimination but fails to take corrective measures within its control."); *Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, No. SA-18-CV-404-XR, 2020 WL 1248263, at *12 (W.D. Tex. Mar. 16, 2020), *aff'd sub nom*, *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 915 (5th Cir. 2021) ("The law is settled that, under the single integrated enterprise doctrine, where one putative employer does not meet the statutory numerosity requirement, it may nevertheless be liable under Title VII if it is part of a single integrated enterprise with another entity if their combined employees exceed the minimum."). This employment discrimination case presents an unusual posture: the employers instead argue that summary judgment is warranted because the single integrated enterprise and joint employer doctrines *do* apply. Contrary to the position that

they appear to have taken in previous employment cases,[13] Defendants contend that they constitute a single integrated enterprise or, in the alternative, joint employers. No. SA-20-CV-928-XR, ECF No. 32 ("Defs.' Mot.") at 11–18. Because they employ more than 500 employees under the single integrated enterprise or joint employer doctrines, Defendants argue that they are not covered and therefore not subject to liability under the EPSLA. *Id.*

Although the EPSLA provides no guidance on how to count the number of employees for purposes of employer coverage, *see generally* §§ 5101–11, 134 Stat. at 195–201, the Secretary of Labor promulgated regulations doing so.[14] *See* § 5111(3), 134 Stat. at 201 (authorizing Secretary of Labor "to issue regulations for good cause . . . as necessary, to carry out the purposes of this Act[.]"); *see also Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2124 (2016) ("[W]hen an agency is authorized by Congress to issue regulations and promulgates a regulation interpreting a statute it enforces, the interpretation receives deference . . . if the agency's interpretation is reasonable."); *Brackeen v. Haaland*, 994 F.3d 249, 359 (5th Cir. 2021) (quoting *Chevron, U.S.A, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)) ("[W]hen 'the statute is silent . . . with respect to the specific issue,' we assume that Congress delegated the matter to agency discretion[.]"). The EPSLA regulations provide, in relevant part:

> To determine the number of Employees employed, all common Employees of joint employers or all Employees of integrated employers must be counted together. Typically, a corporation (including its separate establishments or divisions) is considered a single Employer and all of its Employees must be counted together. Where one corporation has an ownership interest in another corporation, the two corporations are separate Employers unless

---

[13]     *See Solano v. Allen Tharp & Assocs.*, No. SA-11-CV-732-LG (W.D. Tex. filed Sept. 6, 2011), ECF No. 10, at 7–8, 12 (in Title VII case, denying that Allen Tharp & Associates, Inc. employed a waitress at the Lion & Rose).

[14]     The Secretary of Labor promulgated different versions of regulations to enforce the EPSLA. *See Colombe v. SGN, Inc.*, No. 5:20-CV-374-REW, 2021 WL 11938304, at *2 n.3 (E.D. Ky. Mar. 29, 2021). Because "[a]gency actions must be assessed according to the statutes and regulations in effect at the time of the relevant activity[,]" *Texas v. U.S. Env't Prot. Agency*, 829 F.3d 405, 430 (5th Cir. 2016), the Court refers to the regulations in effect at the time of Plaintiffs' allegedly unlawful terminations.

> they are joint employers under the [Fair Labor Standard Act] . . .
> with respect to certain Employees. In general, two or more entities
> are separate employers unless they meet the integrated employer test
> under the [Family Medical Leave Act]. . . . If two entities are an
> integrated employer under this test, then Employees of all entities
> making up the integrated employer must be counted.

29 C.F.R. § 826.40(2)(i)-(iii). Thus, to determine whether Defendants are covered under the

EPSLA, the Court must apply the single integrated enterprise test under the Family Medical Leave

Act ("FMLA") and the joint employer doctrine under the Fair Labor Standard Act ("FLSA"). *See*

*Exxon Mobile Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 573 (5th Cir. 2017) ("Where

the language of the regulation[] is unambiguous, we do not look beyond the plain wording of the

regulation to determine its meaning.").

### A.  Single Integrated Enterprise

Defendants appear to rely on two distinct theories to support their argument that they are

not covered under the EPSLA. Under the first theory, the Lion & Rose is purportedly exempt from

the EPSLA because it constitutes a single integrated enterprise with its sole member—Tharp—

who individually employs more than 500 people. *See* Defs.' Mot. at 12. Under the second theory,

the Lion & Rose is exempt because it is a single integrated enterprise with Allen Tharp, LLC,

which itself employs over 500 employees under Tharp's management.[15]

In support of their first theory, Defendants contend that, under *Donovan v. Grim Hotel Co.*,

747 F.2d 966 (5th Cir. 1984), "it is of no concern that the individual owner (Defendant Tharp)

obviously is not a restaurant or hotel or cleaning service or even able to provide those services

---

[15]    Defendants specifically submit that, at the time of Plaintiffs' allegedly unlawful terminations, the "Lion &
Rose had 40 employees, Allen Tharp & Associates, Inc. had one employee, Allen Tharp, LLC had 590 employees,
ATA Restaurant Holding Company, LLC had no employees, and GC Restaurants SA, LLC had 167 employees. The
total number of employees across all these entities was 798 employees." Tharp Aff. ¶ 13. Based on this undisputed
data, Defendants may remove themselves from the EPSLA's ambit only if the Lion & Rose forms a single integrated
enterprise with Allen Tharp, LLC and its 590 employees. Any other combination will continue to subject Defendants
to the EPSLA under the single integrated enterprise test; thus, the Court only considers the relationship between the
Lion & Rose and Allen Tharp, LLC in assessing Defendants' single integrated enterprise argument.

directly by himself." Defs.' Mot. at 12. According to Defendants, "[i]t is sufficient for a single enterprise that [Tharp] participates in the activities of such services with his entities." *Id.* The Court disagrees. Whereas this case involves application of the FMLA's single integrated enterprise test to determine employer coverage under the EPSLA, *Donovan* involved application of a distinct, three-factor integration test to determine employer coverage under the FLSA.[16] *See Donovan*, 747 F.2d at 969. Moreover, the Fifth Circuit in *Donovan* applied the distinct, three-factor integration test to determine whether five hotel corporations, not the individual president of the five hotel

---

[16]     Defendants contend in their motions for summary judgment that the distinct, three-factor integration test the Fifth Circuit applied in *Donovan* is the proper test to determine employer coverage under the EPSLA. *See* Defs.' Mot. at 9. Inexplicably, Defendants failed to account for the fact that § 826.40 expressly states that the FMLA's single integrated enterprise test applies in EPSLA cases in their motions for summary judgment, instead waiting to address the provision in their reply briefs after Plaintiffs raised it in their responses. Defendants' failure to account for language in § 826.40 that clearly contradicts a key premise of their motions—that the FLSA test is controlling here—is all the more glaring given that they cite to the very same regulation in their motions when discussing application of the joint employer doctrine. *See id.* at 18. While courts generally do "not consider arguments . . . raised for the first time in a reply brief[,]" *Lacher v. West*, 147 F. Supp. 2d 538, 540 (N.D. Tex. 2001), the arguments Defendants present in their replies are, in any event, unpersuasive.

        According to Defendants, "[t]he mere existence of a regulation means nothing in this case, where the Plaintiff's cause of action is statutory, the agency is not a party, and the Court is under no obligation to defer or even to follow the questionable regulatory interpretation." Defs.' Reply, at 2. But courts routinely consider and defer to agency regulations when the underlying cause of action is statutory in nature and where the dispute is between private parties. *See, e.g.*, *Encino*, 136 S. Ct. at 2121 (interpreting agency regulations promulgated by the Department of Labor in FLSA action between an automobile dealership and its employees); *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389 (2008) (interpreting agency regulations promulgated by the Equal Employment and Opportunity Commission in Age Discrimination in Employment Act action between mail pickup and delivery provider and its employees); *see also Earl v. Boeing Co.*, 515 F. Supp. 3d 590, 605 (E.D. Tex. 2021) (interpreting agency regulations promulgated by the National Transportation Safety Board in collusion action between two private parties).

        Further, where, as here, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843. The Court may not, as Defendants suggest, ignore the regulation. It is well established that, when interpreting regulations, "the plain language of the . . . regulation controls . . . absent a clearly expressed legislative intention to the contrary." *Oliver v. U.S. Postal Serv.*, 696 F.2d 1129, 1131 (5th Cir. 1983). Defendants offer no compelling evidence that Congress clearly intended to prohibit the Secretary of Labor from promulgating a regulation that adopts portions of the FMLA. In fact, Congress's actions suggest the opposite: Congress authorized the Secretary of Labor to issue regulations that ensure consistency between the EPSLA and Division C of the FFCRA—otherwise known as the Emergency Family and Medical Leave Act—which itself amends the FMLA. *See* §§ 3101, 3102, 5111(3), 134 Stat. at 189, 201. "[G]iven Congress' delegation of enforcement powers to federal administrative agencies, we also give a degree of weight to their views about the meaning of this enforcement language." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14–15 (2011). Defendants' argument against application of the FMLA's single integrated enterprise test is therefore unavailing. "The court expects, and the rules of professional responsibility require, attorneys to fulfill their duty of candor to the court and to be truthful in disclosures to their adversary." *Chambers Med. Found. v. Chambers*, No. 2:05-CV-0786, 2006 WL 1895463, at *1 (W.D. La. July 5, 2006).

corporations, were an integrated enterprise. *See id.* at 969–71. The Fifth Circuit separately considered whether the president was an "employer" under the FLSA. *See id.* at 971–72. The proper framing, therefore, is Defendants' second theory: whether the Lion & Rose and Allen Tharp, LLC are a single integrated enterprise under Tharp's management. *See e.g., Perry*, 2020 WL 1248263, at *11–14 (applying test to determine whether professional association and hospital are a single integrated enterprise); *Lindsey v. TRT Holdings, Inc.*, No. 3:17-CV-2942-B, 2018 WL 3368930, at *2–3 (N.D. Tex. July 10, 2018) (applying test to determine whether hotel and holding company are a single integrated enterprise).

In FMLA actions, the four factors courts consider in determining whether two or more entities are a single integrated enterprise "include: (i) Common management; (ii) Interrelation between operations; (iii) Centralized control of labor relations; and (iv) Degree of common ownership/financial control." 29 C.F.R. § 825.104(c)(2). "Where this test is satisfied, the employees of all entities making up the integrated employer are counted in determining coverage." *Clarke-Smith v. Bus. Partners in Healthcare, LLC*, No. 3:14-CV-2732-M, 2016 WL 279094, at *6 (N.D. Tex. Jan. 22, 2016) (citing 29 C.F.R. § 825.104(c)(2)); *see also* 29 C.F.R. § 826.40(a)(2)(iii) ("If two entities are an integrated employer under this test, then Employees of all entities making up the integrated employer must be counted."). Plaintiffs concede that Defendants satisfy the fourth factor, namely the degree of common ownership and financial control. *See* No. SA-20-CV-928-XR, ECF No. 33 ("Bruce Resp.") at 7. Nonetheless, genuine issues of material fact percolate through the remaining three factors.

With respect to the first factor, there is a genuine factual dispute as to whether the Lion & Rose and Allen Tharp, LLC are commonly managed.[17] To be sure, Tharp is involved in managing

---

[17] While Defendants incorrectly frame their single integrated enterprise argument according to the three-factor integration test the Fifth Circuit applied in *Donovan*, the evidence they submit in support of their argument remains

both entities. The Lion & Rose is a limited liability company whose members are Allen Tharp & Associates, Inc. and ATA Restaurant Holdings Company, LLC. Tharp Aff. ¶ 3; *see also* Defs.' Mot. Ex. 1 at 1, 4. Tharp, in turn, is the president, incorporator, and sole director of Allen Tharp & Associates, Inc., as well as the sole member of ATA Restaurant Holding Company, LLC. Tharp Aff. ¶¶ 5, 9; *see also* Defs.' Mot. Ex. 2 at 3; Defs.' Mot. Ex. 3 at 11. Tharp is also one of the two managers of Allen Tharp, LLC. Tharp Aff. ¶ 7; *see also* Defs.' Mot. Ex. 6 at 1–2. In addition, Tharp is "directly and intensively involved in the day-to-day operations and management of the Lion & Rose [and] Allen Tharp, LLC[.]" Tharp Aff. ¶ 15. For instance, Tharp personally selects the general managers at the Lion & Rose and Allen Tharp, LLC; has final authority to hire and terminate all employees at the Lion & Rose and Allen Tharp, LLC; and establishes the rate and payment methods for all employees. Tharp Aff. ¶¶ 15(a)–(c), (l). Tharp asserts that he personally directed the terminations of Bruce and Summers, but "specifically directed [that Cox] was not terminated." *See* No. SA-20-CV-928-XR, ECF No. 41-1 ¶ 15(m); No. SA-20-CV-929-XR, ECF No. 43-1 ¶ 15(m); No. SA-20-CV-1046-XR, ECF No. 23-1 ¶ 15(m).

Nonetheless, Tharp concedes that he "usually do[es] not directly discipline employees, leaving that to location managers[.]" Tharp Aff. ¶ 15(k). Further, Tharp testified at his deposition that "[u]sually the managers" at the Lion & Rose issue written reprimands to Lion & Rose employees. No. SA-20-CV-928-XR, ECF No. 33-1 ("Tharp Dep.") 18:7–18:8.[18] Indeed, the excerpts from the transcript of Tharp's deposition indicate that Plaintiffs' terminations were

---

relevant under the proper, single integrated enterprise test under the FMLA. *Compare Donovan*, 747 F.2d 966 at 969 (articulating that FLSA integration test considers whether "(A) the corporations perform related activities, (B) through unified operation or common control, (C) for a common business purpose"), *with* 29 C.F.R. § 825.104(c)(2) (listing common management, interrelation between operations, centralized control of labor relations, and degree of common ownership and financial control as relevant factors courts consider to determine whether two or more entities are a single integrated enterprise under the FMLA).

[18]     Plaintiffs included excerpts of Tharp's deposition in all three of their responses. *See* No. SA-20-CV-928-XR, ECF No. 33-1; No. SA-20-CV-929-XR, ECF No. 35-1; No. SA-20-CV-1046, ECF No. 24-1.

discussed with Lion & Rose personnel only. *See* Tharp Dep. 8:1–8:5, 13:9–15:18. There is no evidence that any personnel from the military dining facilities operated through Allen Tharp, LLC are involved in management decisions concerning Lion & Rose employees. *Cf. Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 428–29 (6th Cir. 2014) (finding genuine issues of material fact on the question of employer integration where the two employers at issue "shared several common managers").

Former Lion & Rose managers and employees confirm that the Lion & Rose did not share managers, other than Tharp, with the military dining facilities. Bruce, for example, states in his declaration that, as a general manager, neither he nor his colleagues reported to anyone outside of the Lion & Rose. Bruce Decl. ¶ 4. Bruce further asserts that, while he was employed, "there was never an instance where the management staff at Lion & Rose ever supervised or directed anyone at any of Mr. Tharp's other businesses." *Id.* In addition, Bruce submits that, while he was employed, he did not meet or communicate with management personnel from the military dining facilities. *Id.* Bruce also maintains that, during his employment, only managers at the Lion & Rose interviewed and hired non-management employees for the Lion & Rose and "handled requests for time off and write-ups for employee infractions." *Id.* ¶¶ 5, 6.

Frank Ayala, also a former general manager of the Lion & Rose, similarly submits in his declaration that, during his employment, personnel from the "military dining businesses [were] not involved in managing Lion & Rose." No. SA-20-CV-928-XR, ECF No. 33-7 ("Ayala Decl.") ¶ 2. Like Bruce, Ayala asserts that he "had no dealings with the managers and employees of Mr. Tharp's other business ventures[,]" and "had no joint training sessions and joint management meetings" with managers from the military dining facilities. *Id.* ¶ 1. According to both Bruce and

Ayala, they were hired to manage only those employees who worked at the Lion & Rose. Bruce Decl. ¶ 2; Ayala Decl. ¶ 1.

Additionally, Summers and Cox submit in their declarations that neither of them worked at the military dining facilities. Summers Decl. ¶ 3; Cox Decl. ¶ 4. Summers and Cox assert that they were supervised by managers at the Lion & Rose only. Summers Decl. ¶ 6; Cox Decl. ¶ 3. Summers and Cox further submit that managers at the Lion & Rose set their work schedules; thus, any requests for time off or shift changes were communicated to managers at the Lion & Rose only. *See* Summers Decl. ¶ 7; Cox Decl. ¶ 6. Therefore, whether the Lion & Rose and Allen Tharp, LLC are commonly managed is a genuine issue of material fact.[19]

The record also establishes genuine factual issues on the interrelation of operations between the Lion & Rose and Allen Tharp, LLC. While it is true that the Lion & Rose and Allen Tharp, LLC "operate for a common business purpose, specifically furnishing food and beverage service through various establishments in the San Antonio, Texas area[,]" Tharp Aff. ¶ 12, Plaintiffs describe significant differences between the Lion & Rose and the military dining facilities Tharp operates through Allen Tharp, LLC. For example, it appears that the military dining facilities do not carry a liquor license and that the two entities have separate offices and equipment. *See* Bruce Resp. at 11–12; *see also* Bruce Decl. ¶ 3; Summers Decl. ¶ 3; Cox Decl. ¶ 1; Ayala Decl. ¶ 2. Plaintiffs also note that Allen Tharp, LLC is not on their paychecks or Forms W-2. Bruce Decl. ¶ 1; Summers Decl. ¶ 2; Cox Decl. ¶ 3. Summers further asserts, and Bruce confirms, that the employee handbook and forms he received and signed when hired to work at the Lion & Rose did not reference any other business Tharp owns or operates. Summers Decl. ¶ 4; *see also* Bruce

---

[19]     Emails attached to Defendants' motions reveal many communications from Tharp to managers at the Lion & Rose only. *See, e.g.*, No. SA-20-CV-438-XR, ECF No. 32-6 ("Defs.' Mot. Ex. 5"), at 13. While these emails also include communications from Tharp to management personnel at other entities, *see, e.g.*, *id.* at 16, such variation further indicates that there is a genuine factual dispute on the question of common management.

Decl. ¶ 5. "All of these documents[,]" Summers declares, "were signed on behalf of Lion & Rose by Christine Ferguson, who was a manager employed by Lion & Rose at the time." *Id.*

Furthermore, although Tharp claims that he uses common human resources and accounting services throughout his business enterprises and that he is the custodian of all employee records, *see* Tharp Aff. ¶ 15(d), Bruce and Cox submit that Lion & Rose personnel files were maintained at the Lion & Rose," Bruce Decl. ¶ 5; Cox Decl. ¶ 7. Summers and Cox also assert that the Lion & Rose maintains its own website and social media accounts, unrelated to Allen Tharp, LLC. Summers Decl. ¶ 5, Cox Decl. ¶ 8. The fact that Tharp sets policies and ensures compliance with labor laws on behalf of both the Lion & Rose and Allen Tharp, LLC, *see* Tharp Aff. ¶¶ (g)-(h), is insufficient to establish interrelation as a matter of law, *see Kieffer v. CPR Restoration & Cleaning Servs., LLC*, 733 F. App'x 632, 635 (3d Cir. 2018) (citing *Engelhardt v. S.P. Richards Co., Inc.*, 472 F.3d 1 (1st Cir. 2006)) ("[T]he fact that a few administrative employees supported both entities is insufficient to create a genuine issue of material fact.").

The third factor is whether labor relations among the Lion & Rose and Allen Tharp, LLC are centralized. While Tharp had the authority to hire and terminate Plaintiffs, "there is no evidence that the managers of one entity had any control over the labor decisions of the other entity." *Kieffer*, 733 F. App'x at 635. In fact, the evidence indicates that general managers at the Lion & Rose could hire and terminate Lion & Rose employees without Tharp's involvement. Indeed, Tharp maintains that he directed the terminations of Bruce and Summers, but not Cox. *See* No. SA-20-CV-928-XR, ECF No. 41-1 ¶ 15(m); No. SA-20-CV-929-XR, ECF No. 43-1 ¶ 15(m); No. SA-20-CV-1046-XR, ECF No. 23-1 ¶ 15(m); *see also* Tharp Dep. 7:15–7:25. Additionally, Tharp testified at his deposition that Ayala hired a male server to work at the Lion & Rose, despite his own "long-standing policy of hiring attractive women as servers." Tharp Dep. 48:6–48:10. The ability of

general managers at the Lion & Rose to hire and terminate employees without Tharp's approval indicates a lack of centralized labor relations between the Lion & Rose and Allen Tharp, LLC.

Further, the fact that Tharp offered Lion & Rose employees the opportunity to temporarily work at the military dining facilities he operates through Allen Tharp, LLC when the Lion & Rose closed because of the COVID-19 pandemic does not establish centralized labor relations as a matter of law. *See* Defs.' Mot. at 14; *see also* Tharp Aff. ¶ 14. As Plaintiffs note, "[i]t is unclear from the record whether this offer was actually conveyed to Lion & Rose employees, and if so, whether any employees actually temporarily worked for these other entities."[20] Bruce Resp. at 12. Summers, for example, asserts that he "was never apprised of this while [he] worked for the Lion & Rose, and [he is] not aware that any of [his] co-workers were given such an opportunity." Summers Decl. ¶ 9. Cox similarly submits that "this opportunity was never offered to [him]." Cox Decl. ¶ 5. Summers, Cox, and Ayala also declare that, during their employment, no employees from the military dining facilities ever worked at the Lion & Rose. Summers Decl. ¶ 9; Cox Decl. ¶ 5; Ayala Decl. ¶ 3. Based on the evidence presented, the Court concludes that a genuine issue of material fact exists on the question of centralized labor relations.[21]

---

[20]   Because the military dining facilities apparently did not carry a liquor license, it is unclear what employment Summers and Cox, as bartenders, could avail themselves of at these facilities. *See* Cox Decl. ¶ 5.

[21]   In their responses, Plaintiffs primarily rely on *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773 (5th Cir. 1997). Specifically, Plaintiffs argue that "the Fifth Circuit recognizes in the context of the integrated employer analysis that individuals who hold high-level positions in two related entities 'can and do change hats' to represent the entities separately despite common ownership." Bruce Resp. at 8. "Therefore," Plaintiffs contend, "to demonstrate that the high-level person's involvement in the termination decision at issue is evidence of centralized control over labor relations, the moving party must show that the person was acting on behalf of the entity that the moving party claims is integrated with the direct employer." *Id.*

Defendants take issue with the application of *Lusk* in these cases. Defs.' Reply, at 7. In Defendants' view, "*Lusk* presumes and is limited to parent-subsidiary relationship rather than the facts here, of common apex management and control of Allen, Tharp L.L.C. [sic] and Lion & Rose." *Id.* The Court, however, has previously found that *Lusk* is not limited to parent-subsidiary situations. *See Perry*, 2020 WL 1248263, at *12.

Nevertheless, the Court does not rely on Plaintiffs' proposition that *Lusk* applies in these EPSLA cases. While the Fifth Circuit in *Lusk* applied the same four factors courts consider when determining employer integration under the FMLA, *see* 129 F.3d at 777, *Lusk* involved a civil rights action under the Age Discrimination in Employment Act.

Therefore, Defendants have failed to establish as a matter of law that the Lion & Rose and Allen Tharp, LLC are a single integrated enterprise.

## B. Joint Employers

Defendants argue that the Lion & Rose and Tharp are joint employers. Defs. Mot. at 15–18. It is undisputed that the Lion & Rose employed Plaintiffs. *See* Bruce Compl. ¶ 1; Summers Compl. ¶ 1; Cox Comp. ¶ 1. Thus, the Court need only determine whether Tharp is also Plaintiffs' employer. "We rely on the economic reality test when determining a party's status as an employer under the FLSA."[22] *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014). "In joint employer contexts, each employer must meet the economic reality test." *Id.* (citing *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012)). Under the economic reality test, the Court must consider "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[23] *Gray*, 673 F.3d at 355.

---

Plaintiffs fail to offer meaningful discussion on why caselaw construing the four employer integration factors in different statutory contexts should apply here. The Court, therefore, will not presume that caselaw construing the four employer integration factors in non-EPSLA contexts is applicable in these EPSLA cases.

[22]     The parties do not dispute application of the joint employer doctrine as construed under the FLSA.

[23]     The Fifth Circuit has also applied a five-factor test. *Itzep v. Target Corp.*, 543 F. Supp. 2d 646, 653 (W.D. Tex. 2008). In *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668 (5th Cir. 1968), the Fifth Circuit considered the following five factors to determine whether an entity is an employer or joint employer under the FLSA:

> (1) Whether or not the employment takes place on the premises of the company?; (2) How much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment condition of the employees?; (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?

*Lone Star Steel*, 405 F.2d at 669–70. Some of the factors articulated in *Lone Star Steel* are not squarely applicable where, as here, courts consider whether an individual is a joint employer. As a result, the Court addresses Defendants' joint employer argument according to the factors articulated in *Gray*. Although Defendants frame their joint employer doctrine according to the factors articulated in *Lone Star Steel*, the evidence they submit in support of their argument remains relevant under the factors articulated in *Gray*.

The evidence shows that Tharp is Plaintiffs' joint employer. Tharp possesses the power to hire and fire employees at the Lion & Rose. *See* Tharp Aff. ¶¶ 15(a), (b), (l), (m); *see also* Bruce Decl. ¶ 2 (declaring that Tharp hired him). Indeed, Plaintiffs allege that, although they were employed by the Lion & Rose, Tharp directed their unlawful terminations. *See* Bruce Compl. ¶¶ 1, 11; Summers Compl. ¶¶ 1, 14; Cox Compl. ¶¶ 1, 12; *see also* Ayala Decl. ¶ 1 (declaring that Tharp discharged him). There is also no dispute that Tharp has the authority to supervise and control work schedules and conditions of employment at the Lion & Rose. Tharp asserts that he sets corporate policies for the Lion & Rose and communicates daily with general managers at the Lion & Rose to discuss "profitability, performance improvements, scheduling of employees, hiring, security, COVID-19 impacts and requirements, and essentially all facets of managing the food and beverage service business." Tharp Aff. ¶ 15(g). Additionally, according to Bruce, "[t]he reporting structure at Lion & Rose was employee to manager to general manager to Mr. Tharp[,]" indicating that he, as a general manager, reported directly to Tharp. Bruce Decl. ¶ 4; *see also* Ayala Decl. ¶ 1 (declaring that he reported to Tharp).

Although Summers and Cox assert that a bar manager at the Lion & Rose set their schedules, *see* Summers Decl. ¶ 7; Cox Decl. ¶ 6, Tharp nonetheless supervises employee work schedules and conditions of employment at the Lion & Rose. In addition, Tharp establishes the rate and method of payment of Lion & Rose employees. *See* Tharp Aff. ¶ 15(c). Tharp also states that he is the custodian of employee records. *See id.* ¶ 15(i). Tharp's assertion that he maintains employee records is not diminished by the fact that the personnel files of Lion & Rose employees may have been stored at the Lion & Rose. Finally, emails attached to Defendants' motions for summary judgment corroborate the extent of Tharp's involvement in hiring, terminating, setting

employee schedules, managing conditions of employment, establishing rates and methods of payment, and maintaining employee records. *See generally* Defs.' Mot. Ex. 5.

Section 826.40, however, clearly states that, "[t]o determine the number of Employees employed, all *common* Employees of joint employers . . . must be counted together." 29 C.F.R. § 826.40(a)(2) (emphasis added); *see also* 29 C.F.R. § 826.40(a)(2)(ii) ("Where one corporation has an ownership interest in another corporation, the two corporations are separate Employers unless they are joint employers under the FLSA, see part 791 of this chapter, with respect to certain Employees."). "It does not state that all employees of both alleged joint employers may be counted." *Perry*, 2020 WL 1248263, at *8. "A regulation should be construed to give effect to the natural and plain meaning of its words." *Diamond Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 528 F.2d 645, 649 (5th Cir. 1976).

Defendants have failed to show that any employees from the military dining facilities Tharp operates through Allen Tharp, LLC are common to the Lion & Rose. Aggregation of all Lion & Rose and Allen Tharp, LLC employees is therefore improper. As a result, Defendants have failed to establish as matter of law that the Lion & Rose and Tharp are joint employers.

## CONCLUSION

Accordingly, Defendants' motions for summary judgment in No. SA-20-CV-00928-XR (ECF No. 32), No. SA-20-CV-0929-XR (ECF No. 34), and No. SA-20-CV-1046-XR (ECF No. 23) are hereby **DENIED**.

It is so **ORDERED**.

**SIGNED** this October 25, 2021.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE